UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America, | Case No. 25-CR-49 (DSD/JFD) |
| Plaintiff, | |
| v. | **ORDER** |
| JEREMY JOSEPH HUNT, | |
| Defendant. | |

This case is before the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636 and District of Minnesota Local Rule 72.1 on two dispositive pretrial Motions to Suppress Evidence and Dismiss the charges against Defendant Jeremy Joseph Hunt. (Dkt. Nos. 32, 47.) The second Motion includes a Motion for a hearing allowing the court to consider facts outside the four corners of an application for a search warrant for Mr. Hunt's phone, pursuant to *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978). For the reasons discussed below, Mr. Hunt's motion for a *Franks* Hearing is granted, and Mr. Hunt's motions to suppress evidence and dismiss the charges against him are held in abeyance until the parties have briefed the Court on the evidence adduced at the *Franks* Hearing.

I. <u>Facts</u>

Detective Colton Herman suspected that Mr. Hunt was dealing narcotics and began investigating him. As part of his investigation, Detective Herman submitted an application to a Minnesota state court judge for a search warrant to allow him to track Mr. Hunt's

1

telephone. In the sworn affidavit that was part of that application, Detective Herman told the judge that in October 2024 he observed Mr. Hunt arrive at a Rochester business, saw another man get out of a parked car and into Mr. Hunt's car, and saw Mr. Hunt's car continue to drive around for a few minutes before the other man got out and went back to his own car. Detective Herman found this to be behavior typical of a narcotics sale. Detective Herman also learned in October of 2024 that Mr. Hunt was on federal supervised release (which Detective Herman called "federal parole") for a narcotics conviction.

Detective Herman related that in November of 2024, "I, along with other detectives, conducted physical surveillance on Hunt and observed him conduct another short-term meeting with a vehicle in a public space in Rochester MN." Specifically, "detectives observed Hunt meet with another vehicle in the city of Rochester MN at a public business, and approached the passenger side window of this vehicle. Hunt was at the window for a short time frame, and then returned to his vehicle, and exited the public business." Again, Detective Herman noted that in his training and experience, this behavior is consistent with a narcotics sale.

Detective Herman then described the stop of the car that Mr. Hunt had been seen to approach in the parking lot of the Rochester business in November. The police initially found over 17 grams of methamphetamine in the car. The driver told detectives that he had recently purchased the methamphetamine from Hunt and that he had bought methamphetamine from Hunt numerous times in the last 90 days. The driver also told the police that he believed Mr. Hunt's source of supply for methamphetamine is in the Twin Cities "based on prior conversations [the driver] had with Hunt." The driver told the police

2

Mr. Hunt's phone number; the police were able to verify that the number was that of Mr. Hunt.

II. **Legal Standard**

Affidavits submitted to a court in support of an application for a search warrant are presumed to be valid. *Franks v. Delaware*, 438 U.S. 154, 171 (1978). However, a defendant can overcome that presumption of validity and obtain a hearing on the truthfulness of the statements made by the affiant if they make "a substantial preliminary showing" that the affiant deliberately or recklessly (a) made false statements in or omitted information from the affidavit, and (b) that with the false statements corrected or the missing information supplied, the affidavit no longer establishes probable cause. *United States v. Gonzalez*, 781 F.3d 422, 430 (8th Cir. 2015) (quoting *Franks*, 438 U.S. 155–56 (1978)). Recklessness may be inferred from omissions in an affidavit when the material omitted "would have been clearly critical to a finding of probable cause." *United States v. Conant*, 799 F.3d 1195, 1200 (8th Cir. 2015) (quoting *United States v. McIntyre*, 646 F.3d 1107, 1114 (8th Cir. 2011)). The false statements or omissions must have been necessary to a finding of probable cause to issue the warrant. *United States v. Mayweather*, 993 F.3d 1035, 1043 (8th Cir. 2021) (quoting *United States v. Engler*, 521 F.3d 965, 969 (8th Cir. 2008)).

A motion for a *Franks* hearing is non-dispositive (and therefore resolved by order rather than by report and recommendation) because a *Franks* hearing does not finally determine whether evidence will be suppressed, but only what procedure will be used to decide a motion to suppress. *United States v. Green*, No. 19-CR-103 (MJD/ECW), 2020 WL 6337705, at *2 (D. Minn. Oct. 29, 2020). "A *Franks* hearing is just a step along the

way to the ultimate goal of a motion to suppress…" *Id.* at *2 (quoting *United States v. Lucca*, 377 F.3d 927, 932 (8th Cir. 2004)). The issue presented by a motion for a *Franks* hearing is whether a hearing will be held; if that hearing is held, the evidence that is elicited will of course bear on a motion to suppress search and seizure evidence, but a *Franks* hearing does not, in and of itself, resolve a question of whether evidence will be suppressed.

In order to be entitled to a *Franks* hearing, the defendant must make a "substantial preliminary showing" that a law enforcement agent made false statements in, or omitted facts from, a search warrant application; that the agent did so either "knowingly and intentionally" or with reckless disregard for the truth; and that the false statements or omissions are material. Materiality is assessed by re-reading the search warrant application with either the false statements corrected or excised, or the missing information supplied. If the affidavit no longer establishes probable cause, then the omissions or misstatements were material. *United States v. Arnold*, 725 F.3d 896, 898 (8th Cir. 2013). The requirement of a substantial preliminary showing "is not lightly met." *Id*.

### III.   Analysis

Based on the information provided at the initial hearing on Mr. Hunt's first Motion to Suppress and submissions of the parties since that hearing, the Court finds that Mr. Hunt has made a substantial preliminary showing both that some statements in Detective Herman's search warrant application affidavit are not true, that other information that should have been provided to the issuing judge was not, and that these misstatements and omissions were material to the state court judge's probable cause determination. Therefore, Mr. Hunt is entitled to a *Franks* Hearing. Whether the statements in the affidavit are in fact

false, whether material was omitted, whether any false statements or omissions that are found were material to probable cause, and whether false statements or omissions were made deliberately or through reckless disregard for the truth are all issues to be determined at the hearing. That a substantial preliminary showing has been made does not decide any of these issues.

Detective Herman's affidavit describes a November encounter between Mr. Hunt and the driver of another vehicle in a Rochester parking lot. In his affidavit supporting the warrant application, Detective Herman said, "Detectives observed Hunt meet with another vehicle in the city of Rochester, MN at a public business, and approached the passenger side window of this vehicle. Hunt was at the window for a short time frame, and then returned to his vehicle, and exited the public business." (Def.'s Ex. 4 at 2.) But when Detective Herman testified, he provided conflicting answers as to whether this actually occurred. At one point, he said that no one got out of a car and walked up to another car, but rather, the cars approached each other such that a drug transaction could occur window-to-window with both parties remaining in their cars. (Hr'g Tr. 44:7–13, Dkt. No. 44.) Later, he said that he had not seen this encounter himself but his partners "clearly told [him] that there was a subject that walked up to [the car]" and that those other officers should have documented their observations in their own reports. (*Id*. at 47:18–24.) In fact, there was no documentation of any such observation in the police reports of Detective Herman or the three other officers, as the United States concedes. (*See* Gov's Resp. 2–3, Dkt. No. 51; *see also* Def.'s Sec. Mot. 4, Dkt. No. 47.).)

Turning to the affidavit's description of the traffic stop of the person who allegedly purchased methamphetamine from Mr. Hunt (Def.'s Ex. 4 at 2) Detective Herman's affidavit states that in that stop, police found over 17 grams of methamphetamine, which the driver said he had purchased from Mr. Hunt. What is not in the affidavit is that officers later found another 38 grams of methamphetamine in the vehicle, (*see* Gov.'s Resp. 8, Dkt. No. 51), or any information about the decades-long personal history between the other driver and Mr. Hunt, which included the fact that Mr. Hunt had allegedly stolen the other driver's snowmobile and the other driver's father's truck. (Def.'s Sec. Mot. 6, Dkt. No. 47.) Also absent from the affidavit is the disclosure that when the police tried to recruit the other driver as an informant, he responded that he would need to keep using illegal drugs if he is going to be an effective informant, and that he would not testify.

The undisclosed additional methamphetamine is highly relevant because the driver of the other vehicle did not disclose it immediately to the police (they had to search for it and find it) and because the other driver did not attribute this additional methamphetamine to Mr. Hunt. Knowing this information, along with the animosity the other driver bore towards Mr. Hunt because of their personal history, is relevant to probable cause. Certainly, substantial information tending to show that anything the other driver says—including things he says about Mr. Hunt—should be treated skeptically was not shared with the issuing judge so he could consider its potential bearing on probable cause. The other driver had an independent, bias-based motive to provide untruthful information to Detective Herman, but Detective Herman omitted any reference to the additional methamphetamine or the potential bias from the warrant application.

Excising the November encounter in the parking lot and the other driver's statements, the Court is left only with the October parking lot encounter and the statement in the affidavit that Mr. Hunt was on federal supervised release for narcotics charges when Detective Herman applied for the warrant. (Def.'s Ex. 4 at 3.) While this is not nothing, it is not nearly enough to establish probable cause, which means these untrue statements and omissions were material.

Accordingly, Mr. Hunt has made the substantial preliminary showing required by *Franks*. Mr. Hunt's motion for a *Franks* Hearing is granted, and the parties will contact the Court's chambers for a hearing date.

**SO ORDERED.**

Dated: December 16, 2025
          *s/ John F. Docherty*
          JOHN F. DOCHERTY
          United States Magistrate Judge